**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

**Alexis Rodriguez-Rodriguez**

    Petitioner

    v.

**United States of America,**

    Respondent.

CIVIL NO. 15-2082 (PG)
Related Crim. No. 07-290 (PG)

**OPINION & ORDER**

Before the court is petitioner Alexis Rodriguez-Rodriguez's ("petitioner" or "Rodriguez") motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255 (Docket No. 1), and the United States' (or the "government") opposition thereto (Docket No. 6). For the reasons explained below, the court **DENIES** petitioner's motion to vacate.

**I. Background**

On July of 2007, a grand jury indicted petitioner and 94 other individuals for conspiring to possess and distribute narcotics within 1,000 feet of a public housing facility. See Crim. No. 07-290 (PG) (hereinafter "Crim."), Docket No. 2. The grand jury also indicted Rodriguez and other co-defendants for aiding and abetting the use or carrying of a firearm in furtherance of a drug crime. Id.

According to the indictment, from January 2003 to July 2007, a violent gang known as "the Combo of Dr. Pila" (the "Combo") ran drug distribution points at several public housing projects located in Ponce, Puerto Rico and other neighboring areas.[1] Id. The indictment deemed petitioner as an "enforcer," "co-conspirator" and "associate" within the Combo organization. It states that he financed the purchase of narcotics and provided the Combo gang with firearms and ammunition. The indictment also states that he received proceeds of the controlled substances sold at Combo drug points in Ponce and Juana Diaz, Id. pp. 11-12; 13-14. Petitioner pleaded not guilty and proceeded to trial.

Following trial by jury, on September 3, 2009, Rodriguez was found guilty of conspiracy to possess with intent to distribute narcotics in violation of 21

---

[1] The gang got its sinister name after the Dr. Manuel De La Pila Iglesias Public Housing Project in Ponce, Puerto Rico, where they ran drug-trafficking operations.

U.S.C. §§ 841, 846 and 860, and of aiding and abetting the possession of guns in furtherance of the drug-trafficking crime in violation of 18 U.S.C. §§ 2 and 924(c). See Crim. Docket Nos. 2917, 3386. On December 15, 2009, Rodriguez was sentenced to 240 months as to the drug count and 60 consecutive months as to the gun count. Crim. Docket No. 3386.[2] Petitioner appealed, but the First Circuit Court of Appeals affirmed his conviction and sentence. See Crim. Docket Nos. 4064 and 4634. On June 16, 2014, petitioner's conviction became final when his petition for certiorari was denied. See Rodriguez-Rodriguez v. United States, 134 S.Ct. 2823 (2014).

On August 10, 2015, Rodriguez filed a petition to vacate, set aside or correct the sentence imposed on him, along with an attached memorandum of law. See Docket No. 1. In these documents, petitioner requests that this court vacate his sentence and order a new trial because of a violation of his Sixth Amendment right to a public trial. Petitioner's memorandum asserts that the court excluded his "family, relatives and friends" from the courtroom in violation of his Sixth Amendment right to a public trial. See Docket No. 1-1 at p. 2.

Represented by counsel, petitioner then filed a supplemental motion and notice of appearance to petition under 28 U.S.C. § 2255 on October 14, 2015. See Docket No. 5. In said motion, petitioner restated that the court erred in closing the jury selection process to "the public" and that this alleged complete closure was a structural error that "infect[ed] the entire trial process." See Docket No. 5 at pp. 2-3. Attached to petitioner's supplemental motion are six sworn statements of relatives and friends detailing how they were allegedly turned away from the courtroom on August 7, 2019 – the first day of the jury selection process. See Docket No. 5, Crim. Docket. No. 3463.

On October 19, 2015, the government filed a response in opposition to petitioner's motion. See Docket No. 7. The government claims that petitioner's motion lacks merit because petitioner's present courtroom closure claim was "raised and rejected on direct appeal by two (2) of petitioner's co-defendants," therefore, he is not entitled to re-litigate the issue in a collateral proceeding. See id. at p. 2. The government also points out that petitioner has brought forth a "subjacent but not developed" ineffective assistance of counsel claim for which petitioner is not entitled to relief. See id. at pp. 8-9.

On January 15, 2016 petitioner replied to the government's opposition. In

---

[2] Petitioner later filed a motion for reduction of sentence under 18 U.S.C. § 3582(c)(2). Crim. Docket No. 4202. On August 2015, the court granted the motion and reduced the previously imposed term of imprisonment of 78 months on the drug count to 63 months. Crim. Docket Nos. 4391 and 4392.

said submission, petitioner avers that his courtroom closure claim may be litigated because it is different from that of his codefendants. Petitioner also asserts, without more, that he did not waive his right to a public trial nor did he fail to bring forth counsel's ineffectiveness. See Docket No. 13 at p. 4. Attached to petitioner's response are two unsworn statements from two different attorneys who represented one of petitioner's co-defendants, namely, Danny Guzman Correa. The affidavits detail these attorneys' respective accounts of the *voir dire* process that took place on August 7, 2009 and how they represented their client.

## II.   Standard of Review

Pursuant to 28 U.S.C. § 2255, a federal prisoner may move to vacate, set aside, or correct his sentence "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C § 2255(a); Hill v. United States, 368 U.S. 424, 426-427 (1962); Ellis v. United States, 313 F.3d 636, 641 (1st Cir. 2002).

The Sixth Amendment to the United States Constitution declares that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." This right to an open courtroom protects the rights of the public at large, and the press, as well as the rights of the accused. See Press-Enterprise Co. v. Superior Court of Cal., Riverside Cty., 464 U.S. 501, 508-510,(1984). The Supreme Court has recognized a public-trial violation as a type of structural error – one that affects the trial in its entirety. See Weaver v. Massachusetts, 137 S. Ct. 1899, 1910-12 (2017), United States v. Gonzalez-Lopez*,* 548 U.S. 140, 149, (2006). The Sixth Amendment guarantee to an open courtroom enhances both the basic fairness of the criminal trial and the appearance of fairness so essential to public confidence in the system. See Richmond Newspapers, Inc. v. Virginia*,* 448 U.S. 555, 569, (1980).

Moreover, the Sixth Amendment guarantees that in all criminal prosecutions, the accused have a right to the assistance of counsel for their defense. U.S. Const. amend. VI. It has long been recognized that the right to counsel means the right to the effective legal assistance. Strickland v. Washington, 466 U.S. 668, 686 (1984) (quoting McMann v. Richardson, 397 U.S. 759, 771 n. 14 (1970)). Where, as here, a petitioner moves to vacate his sentence on an ineffective assistance of counsel basis, he must show that "counsel's conduct so undermined

the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result." Strickland 466 U.S. at 686; see also Argencourt v. United States, 78 F.3d 14, 16 (1st Cir. 1996) (a petitioner seeking to vacate his sentence based on the ineffective assistance of counsel bears a very heavy burden).

For petitioner's ineffective assistance of counsel claim to succeed, he must satisfy a two-part test. First, petitioner needs to show that "counsel's representation 'fell below an objective standard of reasonableness.'" Padilla v. Kentucky, 559 U.S. 356, 366 (2010) (quoting Strickland, 466 U.S. at 688). Second, petitioner must establish that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been more favorable to him. See United States v. Carrigan, 724 F.3d 39, 44 (1st Cir. 2013) (citing Missouri v. Frye, 132 S.Ct. 1399, 1409 (2012)). Thus, petitioner must demonstrate both incompetence and prejudice. Failure to prove one element proves fatal for the other. See United States v. Caparotta, 676 F.3d 213, 219 (1st Cir. 2012). Nonetheless, the court "need not address both requirements if the evidence as to either is lacking." Sleeper v. Spencer, 510 F.3d 32, 39 (1st Cir. 2007). Thus, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice…that course should be followed." Strickland, 466 U.S. at 697.

### III. Discussion

#### A. Courtroom Closure

The Sixth Amendment right to a public trial extends to the jury *voir dire*. See Presley v. Georgia, 558 U.S. 209, 213 (2010) (per curiam) (citation omitted); United States v. Agosto-Vega, 617 F.3d 541, 545 (1st Cir. 2007). Although that right is not absolute, exceptions are few and far between. Agosto-Vega, 617 F.3d at 545. Prior to excluding the public at any stage of a criminal trial, "the party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced, the closure must be no broader than necessary to protect that interest, the trial court must consider reasonable alternatives…, and make findings adequate to support the closure." Waller v. Georgia, 467 U.S. 39, 48 (1984) (alteration in original); see also Presley, 558 U.S. at 213–214 (further noting that when a defendant objects to a closure but does not offer alternatives, the judge must think of some on his own).

In light of the foregoing, the events of August 7, 2009 — the first day of petitioner's trial — will be the focus of the court's analysis. Before jury *voir dire*, CSOs informed the undersigned that a group of people had arrived in three school-type buses wearing custom printed t-shirts in support of Danny Guzman-Correa, one of petitioner's co-defendants. The situation was discussed at sidebar with the attorneys, at which point the undersigned decided to exclude <u>that specific group of spectators</u> from the courtroom. Crim. Docket No. 3461 at pp. 59-60. Counsel Lizarribar-Buxo did not object to the exclusion but rather reacted affirmatively to the court's decision and the record so reflects:

| | |
|---|---|
| The court: | All right. I've been informed by my CSO that the marshals informed him that three buses, school-buses type, have arrived here with persons who have T-shirts saying "Danny, we support you and we back you." I'm not going to allow that and I'm not going to tolerate it, and none of those persons are going to walk into the courtroom. They are going to be sent back and they are going to be – |
| Mr. Entin: | I don't think that's appropriate. I had no idea. Send them back. |
| The court: | I'm not blaming you guys. I'm just saying they are here, the marshal told me. And I'm not going to tolerate any activity like that from any of the defendants. So you had better tell you[r] clients during the recess or noon that they had better behave; otherwise, I'm going to exclude them from the courtroom and I'll put a camera next door at the holding cells, and then they can watch the trial from there. |
| Ms. Lizarribar Buxo: | Very well. |
| The court: | I'm going to order the marshals to remove them from the court. |

<u>Id.</u> Furthermore, petitioner avers that the practice to close jury selection from the public was standard procedure in Puerto Rico District Court trials. See Docket No. 5 at p. 3. To support this contention, petitioner heavily relies on <u>United States v. Negron-Sostre</u>, 790 F.3d 295, (1st Cir. 2015), where the First Circuit was able to determine that there had been a complete courtroom closure during the jury *voir dire* process. In <u>Negron Sostre</u>, the court was able to rest on testimony from CSO's and attorneys that supported the allegation regarding a

standard practice of enforcing complete courtroom closure during jury selection processes. Nonetheless, this case alone does not establish an automatic presumption of complete courtroom closure during jury selection processes in Puerto Rico District Court proceedings. See United States v. Astacio-Espino, 150 F. Supp. 3d 153, 166, (D.P.R. 2015) (CSO testimony sustained practice of keeping the courtroom open during *voir dire* processes at the instruction of the court).

Now, petitioner has submitted six sworn statements signed by family members and friends who affirm, under penalty of perjury, that U.S. Marshals excluded them from the courtroom.[3] Docket No. 5-1 at pp. 1-6. Additionally, petitioner has submitted two unsworn statements provided by two of Correa Guzman's attorneys that detail the events that transpired during the *voir dire* process and their handling of their client's representation. These mean to support petitioner's claim that complete courtroom closure was the standard procedure at the time, but the court finds the same immaterial, inconsequential and largely unconvincing to that effect. The court has carefully reviewed all submitted statements and finds the facts detailed therein in and of themselves insufficient to demonstrate that a complete courtroom closure occurred.

There is no evidence that the undersigned knew the complainants were seeking entry, intended to deny the complainants access to the court, or harbored any other illicit animus. As the trial transcript demonstrates, *supra,* the undersigned only ordered the removal of the t-shirt wearers before selecting and empaneling the jury. Moreover, had there been a complete courtroom closure in effect, there would have been no need for the court to single out and unequivocally exclude said supporters from the courtroom. For lack of evidence, and in accordance with this court's recollection, a complete courtroom closure never took place during the jury empanelment process. Petitioner's claim is thus unavailing.

### B.      Ineffective Assistance of Counsel

But assuming *arguendo* that a complete courtroom closure did occur, and that petitioner's family and friends were indeed excluded during jury *voir dire*, the court must still determine whether petitioner is entitled to *habeas* relief

---

[3] The declarants are: (1) Jonathan Gonzalez (petitioner's friend); (2) Perla D. Rodriguez-Rodriguez (petitioner's sister); (3) Yramzie Martinez (petitioner's friend); (4) Iramari Acosta (petitioner's sister-in-law); (5) Darleen Rodriguez Heredia (petitioner's friend); and (6) Coraly Tormos Colon (petitioner's consensual partner).

via his underlying ineffective assistance of counsel claim. Though not properly spelled out, the court agrees with the government in that petitioner has brought forward an underdeveloped ineffective assistance of counsel claim that cannot prosper. Petitioner has raised a hazy collateral attack premised on the fact that "defense counsel contributed to the closure by not raising an objection." See Docket No. 5 at p. 4. Petitioner maintains that the courtroom's complete closure during the jury selection process constitutes structural error. Thus, this court must address a case in which structural error doctrine intertwines with an ineffective assistance of counsel claim.

Ordinarily, the violation of the constitutional right to a public trial is a structural error. See Waller, 467 U.S. at 49-50 and n.9. The structural error inquiry applies when the alleged error is one that "affects the framework within which the trial proceeds," and not "simply an error in the trial process itself." Arizona v. Fulminante, 499 U.S. 279, 310 (1991). Cf. United States v. Gonzalez-Lopez, 548 U.S. 140, 148 (2006) (quoting Fulminante, 499 U.S. at 310) (noting that trial errors generally subject to harmlessness review are errors that "occurred during presentation of the case to the jury" and their effect may "be quantitatively assessed in the context of other evidence presented in order to determine whether [they were] harmless beyond a reasonable doubt"). Petitioner asserts that the structural error doctrine requires this court to automatically vacate his sentence and order a new trial. See Docket No. 5 at p. 4.

However, the Supreme Court recently clarified the proper standard within which to evaluate an ineffective-assistance claim premised on counsel's failure to object to a structural-type error. Weaver, 137 S. Ct. 1899, 1910-12 (2017). Relevant to this case, the Court recognized that "while the public-trial right is important for fundamental reasons, in some cases an unlawful closure might take place and yet the trial still will be fundamentally fair from the defendant's standpoint." Id. at 1910. Now, when a defendant specifically raises a public-trial violation via an ineffective-assistance-of-counsel claim, a showing of prejudice is required. Id. at 1910-1912. In other words, demonstrating the existence of structural error does not automatically satisfy the Strickland prejudice prong.

For the sake of argument, the court shall assume that the Strickland incompetence prong is satisfied because counsel "unreasonably" failed to object to structural error. However, to demonstrate prejudice, petitioner must show a reasonable probability of a different outcome but for counsel's failure to object

to the closure or that such failure by counsel rendered his trial fundamentally unfair. Weaver, 137 S. Ct. at 1910-1912. After a careful review of petitioner's motion to vacate and other moving papers--making the aforementioned assumption in petitioner's favor--, the court finds that petitioner has not alleged, let alone shown, that he was actually prejudiced. Nor has he even argued that the purported public trial violation was so serious as to render his trial fundamentally unfair.

Consequently, petitioner's ineffective assistance of counsel claim on this basis necessarily fails.

### IV. Conclusion

Based on the above, the court finds that petitioner's request for habeas relief under 28 U.S.C. § 2255 (Docket No. 1) is **DENIED AND DISMISSED WITH PREJUDICE.**

**IT IS SO ORDERED AND ADJUDGED.**

In San Juan, Puerto Rico, March 21, 2018